USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/21/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NOEL BRUNO, JR.,
        Petitioner,

   -against-

THOMAS GRIFFIN,
        Defendant.
------------------------------------------------------------X

16 Civ. 4432 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

  Petitioner Noel Bruno Jr. challenges his conviction for first-degree murder, two counts of second-degree murder, second-degree attempted murder, first-degree burglary, first-degree attempted robbery and second-degree criminal possession of a weapon (the "Petition"). Petitioner also challenges his sentence, as a second felony offender, of an aggregate term of life imprisonment without parole. Petitioner objects to a Report and Recommendation (the "Report") issued by the Honorable Kevin Nathaniel Fox, United States Magistrate Judge. The Report was filed on September 5, 2017, and recommends that Petitioner's motion to vacate his conviction and sentence under 28 U.S.C. § 2255 be denied. Petitioner timely submitted objections to the Report (the "Objections") on September 29, 2017. For the following reasons, the Report is adopted, and the Petition is denied.

## I. BACKGROUND

### A. Factual Background

The facts relevant to the Petition are set out in the Report and summarized here. On September 20, 2005, Johanna Hartley and her husband Elvis Hartley visited the apartment of Miguel Aquino and Dilcia Tejada. At approximately 7:00 p.m., three men forcibly entered the apartment and threatened to kill everyone unless they were told the whereabouts of the "stuff." Petitioner beat Aquino in the living room, while Jose Curet and the third perpetrator held the others at gunpoint in the bathroom. The perpetrators then bound and silenced the occupants with tape, before moving them into the living room.

Johanna Hartley witnessed Petitioner strangle Aquino with a cord and then shoot Aquino in the head. Petitioner subsequently shot Johanna Harley in the shoulder, and she lost consciousness. After regaining consciousness, she struggled with Petitioner before he fled the apartment. While fleeing with certain property, Petitioner fired multiple shots behind him, striking Curet. When the police arrived, they found the dead bodies of Aquino, Elvis Hartley and Tejada. The police recovered six casings all from the same gun, as well as Petitioner's cellphone from underneath Aquino's body.

Police arrested Curet at the hospital where he was treated for his gunshot wound. Petitioner was arrested thereafter and was in possession of Elvis Hartley's cellphone; he provided the police with a written statement saying that he and Curet had tied up the victims, but denied shooting anyone. Johanna Hartley identified Petitioner in a photo array and then identified both Petitioner and Curet in separate lineups.

### B. Procedural History

The state court procedural history relevant to the Petition is set out in the Report and summarized here.

#### 1. Trial History

Five aspects of Petitioner's trial in New York state court underlie this habeas petition. First, after being indicted, Petitioner requested that the court sever his trial from that of Curet. The judge denied that request in part, utilizing separate juries at the trial and excusing Petitioner's jury from certain portions of the trial pertaining to Curet.

Second, during her direct testimony, Johanna Hartley referred to Petitioner as "the assassin," explaining that she used the description "[b]ecause he was the one who shot me." Defense counsel objected to the use of the moniker "the assassin" when it was used by the prosecutor. The court overruled the objection, but cautioned the jury that the moniker "is Ms. Hartley's characterization . . . The People have to [prove] their case beyond a reasonable doubt . . . ." For a period of time longer, Johanna Hartley and the prosecutor continued to identify Petitioner as "the assassin." The court again instructed the jury that "the assassin" moniker was being used "solely as a means of identifying and distinguishing among the people" that were in the apartment. Thereafter, at the court's instruction, Johanna Hartley and the prosecutor began describing Petitioner as the "guy wearing the hat." However, Petitioner's defense counsel referred to him as "the assassin" while cross-examining Johanna Hartley. *People v. Bruno*, 111 A.D.3d 488, 492 (2013).

Third, crime scene detective Paul Brown testified that he did not swab blood from inside the Aquino apartment, but had swabbed from the hallway, stairs and building lobby. On his re-direct examination, Brown was asked for the first time and explained

why he had not swabbed blood inside the apartment. Curet's counsel was allowed to re-cross Brown on the subject, but Petitioner's counsel's request to re-cross on the subject was denied.

Fourth, Dr. Carolyn Kappen testified that she observed the autopsy of Aquino, which had been performed by Dr. Zoya Schmuter. She testified that Aquino's death was caused by strangulation and a gunshot wound to the head, relying upon an autopsy report reflecting the joint findings and opinions of both doctors.

Fifth, on the second day of trial, the prosecutor disclosed Detective Infante's notes concerning the continued search for the person named "Geo," whom Petitioner and Curet named in their written statements as the instigator of the murders. The notes had not been disclosed earlier because the detective had recorded them on a separate memo pad. The court ordered their disclosure with some redactions, and invited Petitioner to make appropriate application after reviewing them. Petitioner never made any application regarding the notes.

### 2. Appellate History

Petitioner appealed his judgment of conviction to the New York State Supreme Court, Appellate Division, First Department. *Bruno*, 111 A.D.3d at 488. Petitioner raised six arguments on direct appeal:

1. The trial court abused its discretion in refusing to grant a complete severance, because Petitioner and his co-defendant had antagonistic defenses, in that both had made statements implicating the other and co-defendant's counsel made clear that he would argue at trial that Petitioner was solely responsible for the crimes.

2. Use of the moniker "the assassin" by Johanna Hartley, the prosecutor and the judge was unduly prejudicial and amounted to a removal of the prosecution's burden of proof beyond a reasonable doubt. Furthermore, defense counsel was ineffective for referring to Petitioner as an assassin.

4

3. The trial court violated Petitioner's rights under the Confrontation Clause by refusing to allow him to re-cross Detective Brown.

4. The trial court violated Petitioner's rights under the Confrontation Clause by introducing an autopsy report containing the testimonial statements of Dr. Zoa Schmuter who did not testify at trial.

5. The prosecution's belated disclosure of Detective Infante's notes on the investigation contained in the separate memo pad constituted a *Brady* violation requiring reversal.

6. Petitioner's sentence of life without parole and his consecutive sentences on the other murder counts are harsh and excessive, requiring reduction in the interest of justice.

The Appellate Division rejected all six of these arguments and affirmed the conviction. *Bruno*, 111 A.D.3d at 489-92.

Thereafter, Petitioner filed a motion for a writ of error *coram nobis*, asserting a seventh and eighth basis for relief:

7. The trial court erred by imposing a consecutive sentence.

8. Appellate counsel rendered ineffective assistance by failing to challenge Petitioner's consecutive sentence and trial counsel's "omission to conduct post-trial investigation in light of the newly discovered [*Brady*] evidence."

The Appellate Division summarily denied the writ of *coram nobis*, and the New York Court of Appeals summarily denied leave to appeal. *People v. Bruno*, 23 N.Y.3d 1018 (2014). The Petition now raises these eight contentions for habeas review.

## II. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Report and Recommendation

In reviewing a report and recommendation on a dispositive motion, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When reviewing a magistrate

5

judge's report and recommendation, district courts must modify or set aside any part of the report to which no "specific written objection" is raised, if it "is clearly erroneous or contrary to law." *See* Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *accord Torres v. D.J. Southhold, Inc.*, No. 17 Civ. 5123, 2018 WL 3653156, at *1 (E.D.N.Y. July 31, 2018). Likewise, "a party waives [*de novo*] appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue." *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *see, e.g.*, *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for [*de novo*] review."); *see also Thompson v. United States*, No. 16 Civ. 3468, 2018 WL 327249, at *3 (S.D.N.Y. Jan. 3, 2018) (citations omitted) ("when a party makes conclusory or general objections, or simply reiterates the original arguments, the Court will review the report only for clear error."). But where, as here, a petitioner files objections to a report *pro se*, their submission "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *accord Thompson*, 2018 WL 327249, at *3. "To hold that a factual finding is 'clearly erroneous,'" a court "must be left with the definite and firm conviction that a mistake has been committed." *United States v. Sampson*, 898 F.3d 287, 312 (2d Cir. 2018).

If a party files non-conclusory objections to a report and recommendation, then the district court must "make a *de novo* determination of those portions of the report or

specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997); *accord Grant v. United States*, No. 17 Civ. 2172, 2018 WL 3574865, at *2 (S.D.N.Y. July 25, 2018). Yet, in exercising *de novo* review, "the district court need not . . . specifically articulate its reasons for rejecting a party's objections . . . ." *Morris v. Local 804, Int'l Bd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order); *accord Brown v. Berryhill*, No. 15 Civ. 8201, 2017 WL 2484204, at *1 (S.D.N.Y. June 8, 2017).

### B. Habeas Review

Individuals in state custody following the judgment of a state court can receive habeas relief only if they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Pierotti v. Walsh*, 834 F.3d 171, 176 (2d Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

Accordingly, habeas review is ordinarily precluded "when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). In order to overcome a state procedural bar to a federal claim, a defendant must "demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *accord United States v. Thorn*, 659 F.3d 227, 233 (2d Cir. 2011) (holding that a claim was procedurally barred where the

defendant "cannot carry his burden to demonstrate good cause" and "cannot satisfy the actual-innocence exception to procedural default").

If a state court has reached the merits of a federal claim, § 2254 habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2). The factual findings of the state court "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1). If Supreme Court "cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (internal quotation marks and alterations omitted); *accord Bogan v. Bradt*, No. 11 Civ. 1550, 2017 WL 2913465, at *9 (E.D.N.Y. July 6, 2017).

In applying this standard, "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Ramos v. Racette,* 726 F.3d 284, 287-88 (2d Cir. 2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 131 (2011)). Accordingly, to obtain habeas relief, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Contreras v. Artus*, 778 F.3d 97, 110 (2d Cir. 2015) (citations omitted).

## III. DISCUSSION

The Petition seeks habeas relief based on the eight grounds the New York courts rejected. The Report recommends total denial of the Petition, and Petitioner has objected with respect to each claim. Although the Objections might fairly be deemed conclusory, generalized or reiterative, in light of Petitioner's *pro se* status, *de novo* review is appropriate. *See Triestman*, 470 F.3d at 474. For the reasons below, the Petition is denied and the Report is adopted.

### A. Severance

The Appellate Division found that the trial court "properly exercised its discretion in denying, in part, defendant's request for a severance of his trial from that of his codefendant and instead utilizing separate juries." *Bruno*, 111 A.D.3d at 489. The Appellate Division reasoned, "To the extent defendant's jury may have heard anything it might not have heard at a separate trial, this did not deprive defendant of a fair trial under the circumstances. In any event, any error in this regard was harmless in light of the overwhelming evidence of guilt." *Id.* The Report concludes that "Bruno failed to establish a violation of clearly established federal law in connection with the partial denial of his severance motion, and he cannot obtain federal habeas corpus relief on that ground." The Report states, "Bruno failed to invoke any Supreme Court holding that would mandate complete severance."

Reviewing this claim *de novo*, the Report correctly determines that there was no misapplication of clearly established federal law with respect to denial of the severance motion. "All considered, and dispositively, there is simply no federal precedent holding that a joint trial before separate juries runs afoul of federal constitutional law." *Vasquez*

*v. Rock*, No. 08 Civ. 1623, 2010 WL 2399891, at *9 (E.D.N.Y. June 10, 2010); *see also Hedlund v. Ryan*, 854 F.3d 557, 571 (9th Cir. 2017) ("The Supreme Court has not spoken on the issue of dual juries, and Hedlund cites no relevant authority.").[1] "There is a preference in the federal system for joint trials of defendants who are indicted together" because "joint trials play a vital role in the criminal justice system." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *accord United States v. O'Connor*, 650 F.3d 839, 858 (2d Cir. 2011). Accordingly, there was no unreasonable application of clearly established federal law with respect to the dual jury procedure utilized in Petitioner's trial.

### B. "The Assassin" Moniker

The Petition asserts that being called "the assassin" by Johanna Hartley, the prosecutor and the judge unduly prejudiced the jury and amounted to a removal of the prosecution's burden of proof. Additionally, the Petition asserts that defense counsel was ineffective for referring to Petitioner as "the assassin." Reviewing these claims *de novo*, neither provides a basis for habeas relief.

#### 1. Prejudice

The Appellate Division held, "Defendant's constitutional argument that the repeated reference to him as the assassin violated his rights to a fair trial and due process is not preserved . . . ." *Bruno*, 111 A.D.3d at 490. The Appellate Division also stated

---

[1] The federal courts that have considered the practice have largely determined that "the use of a dual jury system may very well be a reasonable response to prejudicial joinder." *United States v. Al Fawwaz*, 67 F. Supp. 3d 581, 588 (S.D.N.Y. 2014) (citing *Wilson v. Sirmons,* 536 F.3d 1064, 1099 (10th Cir. 2008)); *see also United States v. Lebron–Gonzalez,* 816 F.2d 823, 831 (1st Cir. 1987) (upholding dual jury procedure); *United States v. Lewis*, 716 F.2d 16, 19 (D.C. Cir. 1983) (same); *United States v. Hayes,* 676 F.2d 1359 (11th Cir. 1982) (same); *United States v. Rimar,* 558 F.2d 1271 (6th Cir. 1977) (same); *United States v. Sidman,* 470 F.2d 1158 (9th Cir. 1972). The Second Circuit is yet to address the issue.

that although "the court should have promptly directed [Johanna Hartley] to use a more neutral word," any error was "harmless since the evidence of defendant's guilt was overwhelming, and the error was not unduly prejudicial under the circumstances." *Id.* The Report determines that the Appellate Division's finding of procedural default precludes habeas review.

Reviewing the Report's determination *de novo*, the fair trial and due process claims are procedurally barred because the Appellate Division rejected them as unpreserved, which is an independent and adequate state law ground that precludes habeas relief. "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *accord Lewis v. Lee*, No. 11 Civ. 478, 2015 WL 5751396, at *8 n.7 (S.D.N.Y. Sept. 29, 2015). Although it engaged in some discussion of the merits, the Appellate Division stated clearly, "Defendant's constitutional argument that the repeated reference to him as the assassin violated his rights to a fair trial and due process is not preserved . . . ." *Bruno*, 111 A.D.3d at 491.

The Appellate Division's determination regarding the operation of a New York procedural bar cannot be second guessed here. *See, e.g.*, *Garcia v. Lewis*, 188 F.3d 71, 82 (2d Cir. 1999) ("it is not for us to second-guess a state court's determination as to which there is a fair and substantial basis in state law."). Nor has Petitioner shown good cause and prejudice with respect to his procedural default in state court, and he does not claim to be actually innocent. *See Alcantara v. United States*, No. 13 Civ. 3462, 2017 WL 4417642, at *5 (E.D.N.Y. Sept. 30, 2017) (finding a claim barred by procedural

default where the petitioner did not show cause and prejudice or claim actual innocence). Accordingly, the Petition's constitutional claims predicated on prejudice stemming from "the assassin" moniker fail.

### 2. Ineffective Assistance of Trial Counsel

The Appellate Division held that Petitioner "received effective assistance under the state and federal standards." *Bruno*, 111 A.D.3d at 492. It stated, "Defense counsel may have reasonably decided that after his objection to the use of the term during direct examination was overruled, the best approach was not to attempt to change the witness's word choice but to phrase his questions in a manner clarifying that this was merely the term she had used for defendant." *Id.* The Report concludes, "The state court's determination that counsel's strategic choice did not fall below an objective standard of reasonableness was neither contrary to nor involved an unreasonable application of *Strickland*" -- thereby precluding habeas relief.

Reviewing the claim *de novo*, the Report correctly finds that the Appellate Division's holding was neither contrary to nor an unreasonable application of federal law. "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)).

"In applying this standard, a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy." *United States v. Caracappa*, 614

F.3d 30, 46 (2d Cir. 2010). To demonstrate prejudice under that standard, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lee*, 137 S. Ct. at 1964 (citing *Strickland*, 466 U.S. at 669).

The Appellate Division was not objectively unreasonable in its determination that Petitioner's counsel fell within ambit of effective assistance under this standard. Whether trial counsel's decision to refer to Petitioner as "the assassin" was sound trial strategy under the circumstances is a point on which "fairminded jurists could disagree." *Racette*, 726 F.3d at 287-88. Furthermore, the Petition does not argue, nor is there anything to suggest, that there would have been a fair probability of a different outcome if defense counsel had not adopted the moniker. Accordingly, the Petition is denied with respect to this claim.

### C.   Confrontation Clause

The Appellate Division held, "Defendant's constitutional argument that the preclusion of his redirect examination violated his right to confront the witness against him is not preserved." *Bruno*, 111 A.D.3d at 490. It then proceeded to provide an alternative holding on the merits: "we find that any constitutional error in this regard was likewise harmless beyond a reasonable doubt." *Id.* The Report concludes that the Appellate Division's finding of procedural default operated as an independent and adequate state ground barring federal review.

Reviewing the claim *de novo*, the Report correctly finds that this claim is procedurally barred. "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground,

13

even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez*, 898 F.2d at 9. Here, the Appellate Division expressly stated that the claim was unpreserved. Nor has Petitioner shown cause and prejudice or claimed actual innocence. As a result, the Appellate Division's finding that the challenge was unpreserved precludes habeas relief.

Likewise, the Appellate Division held that Petitioner's Confrontation Clause challenge regarding the autopsy report was also unpreserved. *Bruno*, 111 A.D.3d at 492. The Report finds that the Appellate Division's finding of procedural default operated as an independent and adequate state ground barring federal habeas review. Reviewing the claim *de novo*, the Report correctly finds that this claim is procedurally barred.

"In order to overcome a procedural bar, Petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Schouenborg v. Superintendent, Auburn Corr. Facility*, No. 08 Civ. 2865, 2013 WL 5502832, at *8 n. 13 (E.D.N.Y. Sept. 30, 2013) (citations omitted). Here, the Petition does not show either of these limited exceptions. Accordingly, the Petition is denied with respect to this claim.

### D. *Brady* Violation

The Appellate Division held that Petitioner's *Brady* challenge regarding the late disclosure of Detective Infante's memo book was unpreserved. *Bruno*, 111 A.D.3d at 492. The Report finds that the Appellate Division's finding of procedural default operated as an independent and adequate state ground barring federal habeas review.

14

Reviewing the claim *de novo*, for the same reasons discussed with respect to the other unpreserved claims, this claim is also procedurally barred.

### E. Harsh and Excessive Sentence

On direct appeal, Petitioner challenged his sentence as harsh and excessive under New York law, but the Appellate Division "perceive[d] no basis for reducing the sentence." *Bruno*, 111 A.D.3d at 492. The Report concludes that because "Petitioner's sentence is within the range prescribed by New York law, no federal constitutional issue is presented respecting it."

Reviewing that claim *de novo*, the Report correctly determines that it does not provide a basis for habeas relief. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Hernandez v. Superintendent, Coxsackie Corr. Facility*, No. 17 Civ. 2457, 2018 WL 502784, at *5 (S.D.N.Y. Jan. 22, 2018) (same). Under New York law, "[m]urder in the first degree is a class A-I felony." N.Y. Penal Law § 125.27. When a second felony offender such as Petitioner commits "a class A-II felony, the term must be life imprisonment." N.Y. Penal Law § 70.06. Accordingly, Petitioner's sentence is within the prescribed range of sentences -- and in fact was mandated -- under New York law for the crimes of which he was convicted, and the Petition is denied with respect to this claim.

### F. The Consecutive Sentence

In his petition for a writ of *coram nobis*, Petitioner argued that the trial court erred in imposing a consecutive sentence. The Appellate Division summarily denied the writ

of *coram nobis*. The Report concludes that the claim was unexhausted and recommends that no relief be granted.

Reviewing the claim *de novo*, the claim was properly exhausted; however, habeas relief is nevertheless inappropriate. Where a habeas petitioner raises a claim in his petition for a writ of *coram nobis* in state court and the court denies the petition without discussion, "it was, as a technical matter, adjudicated" and therefore exhausted. *Aparicio v. Artuz*, 269 F.3d 78, 92 (2d Cir. 2001); *accord Francois v. Warden of Sullivan Corr. Facility*, No. 12 Civ. 5333, 2016 WL 4435215, at *3 (E.D.N.Y. Aug. 19, 2016) ("A final decision on a *coram nobis* petition exhausts a petitioner's claim . . . ."). As a result, Petitioner's *coram nobis* claims were exhausted in state court.

However, Petitioner cannot obtain habeas relief on this basis. The Petition's argument that it was an error to impose a consecutive sentence is predicated entirely on state law; it does not argue that the consecutive sentence violated the Double Jeopardy Clause of the U.S. Constitution and there is no reason for concluding that it does so. The Petition's argument that the consecutive sentence needs to be overturned is entirely founded on two state court decisions: *People v. Miller*, 6 N.Y.3d 295 (2006) and *People v. Rosas*, 8 N.Y.3d 493 (2007). Both of those cases involved interpretation of state statutes -- not adjudication of federal constitutional principles. *See, e.g.*, *Rosas* 8 N.Y.3d at 497 ("A court must look to the statutory definitions of the crimes at issue to decide whether concurrent sentences are warranted."). Likewise, the State's argument focused exclusively on state law, raising no federal law arguments.

As a result, it is inferred that the Appellate Division's denial of the writ of *coram nobis* was predicated on state law grounds. *See, e.g.*, *Hylton v. Ercole*, No. 05 Civ. 4077,

16

2010 WL 2594744, at *7 (E.D.N.Y. June 23, 2010) (stating that the "presumption in favor of federal review, applies when there is good reason to question whether there is an independent and adequate state ground for the decision") (citations omitted); *Acosta v. Giambruno*, 326 F. Supp. 2d 513, 523 (S.D.N.Y. 2004) ("Thus, it can be inferred that the Appellate Division's affirmance was issued on the State's proffered state procedural grounds."). Accordingly, the Petition for habeas relief based on the misapplication of New York law is denied; "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004); *accord Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) ("a question of state law *in toto*, it is not subject to federal habeas review.").

### G. Ineffective Assistance of Appellate Counsel

The Petition claims that appellate counsel was ineffective, because he failed to raise the argument that Petitioner's consecutive sentence violated state law. Reviewing the claim *de novo,* the Report correctly recommends that habeas relief be denied on this ground. As described above, the Appellate Division rejected the argument that *Miller* and *Rosas* compel reduction of Petitioner's sentence under New York law. As a result, it was not an unreasonable application of *Strickland* for the Appellate Division to determine that appellate counsel's representation did not fall below an objective standard of reasonableness by failing to raise that losing argument.

The Petition also argues that appellate counsel was ineffective for failing to challenge trial counsel's failure to conduct a post-trial investigation based on the belatedly revealed *Brady* material. The Report concludes that no relief is appropriate on this ground. Reviewing that determination *de novo*, no habeas relief is appropriate. It

17

was not an unreasonable application of *Strickland* for the Appellate Division to hold that appellate counsel was not ineffective for failing to raise that argument. Furthermore, there is nothing to suggest a fair probability of a different outcome if he had done so. Accordingly, the Petition's claim for ineffective assistance of appellate counsel is denied.

## IV.  CONCLUSION

For the foregoing reasons, the Report is adopted and the Petition is DENIED. The Clerk of Court is directed to close this case.

Dated:  September 21, 2018
    New York, NY

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

18